1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JERMAINE BARKLEY,                           No.  2:15-cv-0655 JAM AC

12                    Petitioner,

13          v.                                     FINDINGS AND RECOMMENDATIONS

14    JOE LIZARRAGA, Warden,

15                    Respondent.

16

17          Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the Second Amended

19    Petition, ECF No. 19, which challenges petitioner's 2012 conviction for rape and multiple other

20    charges.  Respondent has answered, ECF No. 32, and petitioner has filed a traverse, ECF No. 39.

21                                     BACKGROUND

22    I.      Proceedings in the Trial Court

23          A.  Preliminary Proceedings

24          Petitioner was charged in Shasta County on February 10, 2012, with the following crimes:

25    rape; forcible oral copulation; penetration by a foreign object; assault with a firearm; battery with

26    serious bodily injury; false imprisonment; possession of a firearm by a felon; illegal possession of

27    ////

28    ////

                                           1

ammunition; criminal threats; possession of cocaine; and possession of amphetamine.  1 CT 1-9
(Complaint).[1]

The complaint, deemed an information, also alleged prior convictions and a prior prison
term.  These allegations were bifurcated, and petitioner waived his right to a jury trial on them.  1
RT 38-39, 2 RT 814-815.  Following a bench trial, the court found the allegations to be true.  The
substantive criminal charges were tried to a jury.

B. The Evidence Presented at Trial

1. Prosecution Case

The jury was presented with evidence of the following facts.[2]  The complaining witness,
Tara S., texted petitioner on February 7, 2012, in response to his Facebook request to her
regarding a video shoot for his music.  (Tara testified under a grant of immunity that she was
involved in the sale of marijuana and prescription pills.  Before the rape and assault, she had tried
to sell three pounds of marijuana.)  Petitioner picked up Tara and her friend Jenny that evening.
They went to Safeway and bought alcohol before going to petitioner's apartment.

Jenny, who had been arguing with her boyfriend on the phone, left the apartment to talk to
him.  Tara talked about music with petitioner while waiting for her friend.  Petitioner showed her
drugs and a gun he had inside the apartment.  At around 3:18 a.m., Tara texted Jenny, "you
lookin' saucier than tartar.  What are you doing leaving me with nigs?  You know I ain't down."
According to Tara, this was an attempt to determine why her friend had left her in the apartment.

When petitioner put his hand on her leg, Tara told him she needed to leave.  Petitioner
became angry and struck her under her left eye with his gun.  Tara went to the bathroom crying
and with a bleeding eye.  Petitioner followed Tara and told her to shut up so the neighbors would
not hear.  He grabbed her by the hair and beat her with the gun.  Petitioner then called her a snitch
and said she was trying to get him in trouble and back in jail.

Petitioner took Tara out of the bathroom and onto the bed.  Petitioner hit her in the head

---

[1] "CT" refers to the Clerk's Transcript on Appeal, Volumes 1 and 2 (Lodged Docs. 1 & 2).
[2] The following summary is adapted from the opinion of the California Court of Appeal, Lodged
Doc. 9, 2014 WL 630182 at *1-*4.  The undersigned has independently reviewed the trial
transcripts and finds this summary to be accurate.

1  and face with his gun.  He also ripped out her hair extensions, leaving bald spots that remained

2  through the trial.  Tara stopped screaming after petitioner threatened to kill her if she did not stop.

3      Petitioner then took off her sweatpants and had intercourse with her.  He also inserted his

4  fingers into her vagina.  After about 10 minutes, petitioner turned Tara over, held her face into a

5  pillow, and continued to rape her while hitting her on the back of her head with the gun.  After

6  this, petitioner grabbed Tara's hair, put her face next to his penis, held a gun to her head, and

7  forced her to perform oral sex on him for about 45 minutes as he struck her.  He then applied

8  lubricant to her stomach, got on top of her, and raped her again.

9      Petitioner forced Tara to walk into the living room at gunpoint.  He put pornography

10  on the television and made her get on her knees and perform oral sex on him while he

11  sat on the couch.  Petitioner hit Tara across the face with the gun about every 10 seconds.

12      Tara lost consciousness at some point.  After the oral sex ended, petitioner made her lie

13  down on the floor as he watched pornography.  Eventually, petitioner made Tara get up and go

14  back into the bedroom, where he continued to rape her and force her to perform oral sex on him

15  while he struck her with the gun.  Late that night or very early in the morning, when it was still

16  dark outside, petitioner wrapped Tara in a blanket and set her on a couch in the bedroom.

17      The next day, petitioner threatened to kill her.  In order to calm him down, Tara agreed

18  with petitioner that it was her fault.  After watching him fall asleep, Tara waited a long time

19  before trying to escape.  She wiggled out of the blanket and ran to the front door as quickly as

20  possible.  Wearing only a shirt, undershirt and bra, she escaped out the front door and went to a

21  neighbor's apartment.  The neighbor called 911 and said Tara had been badly beaten and raped.

22      Redding Police officers arrived to find Tara "hysterical."  According to police, "her face

23  was completely beaten up.  Her left eye was swollen shut and bleeding out of it."  Tara's right eye

24  was also beaten, and she had bruises on her arms, legs, hands, and neck.  As a result of the attack,

25  she suffered sciatic nerve damage in her back, a "cracked" left eye with persistent pain and nerve

26  damage, and memory loss.

27      Tara told officers she was raped, beaten with a gun, and held throughout the night.  She

28  identified a vehicle in the parking lot as belonging to the man who attacked her.

3

Tara was taken to the emergency room for treatment.  According to the treating doctor, she was under "enormous emotional distress," and told him that she was hit multiple times in the head with a gun and a fist.  The emergency room nurse had to leave the room after first seeing Tara; Tara's face was so swollen that it was difficult for the nurse to remain composed.  Tara told the nurse that her assailant hit her with a gun, penetrated her with his penis and finger, and forced her to orally copulate him.

Petitioner gave an incorrect address to officers when he was arrested.  There were abrasions on his knees and cheek.  He complained of wrist pain, so an officer took him to a doctor for an examination.  Petitioner told the emergency room doctor he hurt his wrist that day by punching someone in the face.

Officers searching petitioner's apartment encountered two pit bulls and noticed a strong odor of bleach.  Tara's hair extensions, purse, and a shoulder holster were found in a closet.  Tara's pants, a pair of defendant's jeans, and a loaded semiautomatic Ruger handgun were found in a clothes hamper in the bedroom.  The bedroom also contained Tara's hair, bracelets, and a bottle of bleach.  A bottle of Formula 409 was found on the back of the toilet with a dried bloodstain on the handle of the bottle.  Blood was also found on the wall, a window, and bloody rags were found in the garbage can.

Samples from petitioner's gun and penis tested positive for blood.  Human blood was also found in samples taken from the mattress, a bracelet, the bathroom floor, and the carpet.  Based on DNA testing, Tara could not be excluded as a major contributor to the DNA sample from petitioner's penis or the blood found on his gun.  The criminalist found there was strong evidence defendant was the source of the sperm in the swab taken from Tara's vagina.

Tara testified that she did not consent to having sex with petitioner.  She explained she did not know petitioner and was "not attracted to [B]lack men."  Tara testified to knowing a person named Isaac.  She had sent him a text which said, "I'm still coming, nig, LOL."  Tara did not think Isaac was a Black man.  She explained that she calls lots of her friends "nig" and it "does not have anything to do with the color of their skin.  It's just something I say to my friends."  The term "nig" in the text to Jenny on the night of the attack referred to petitioner.

4

2.   <u>Defense Case</u>

Petitioner testified that he was a convicted felon and a recording artist.  Tara contacted him in response to his Facebook posting about a music shoot, and he picked her up on February 7. When they got to the apartment, petitioner showed her his stash of money, jewelry, and drugs, as well as some music projects he was working on.  Tara told defendant that she grew marijuana to make money.  She asked to spend the night, so petitioner got her a blanket so she could sleep on the couch.  As petitioner dozed off, Tara attempted to perform oral sex on him.  Petitioner was confused but did not try to stop her.  Tara asked if they could have sex.  Petitioner agreed, and they went to the bedroom.  After they finished, Tara went to the bathroom and defendant started to fall asleep.

Petitioner awoke to a weight on his chest and something stinging his face.  Tara was on top of him, pointing a gun at his face, and demanding money and drugs.  Petitioner knocked away the gun, sat up, and pushed her off, causing Tara to partially fall off the bed.  In the ensuing struggle, petitioner grabbed her hair and told her to give up the gun.  He hit her in the face about 15 times before she released the gun.

Tara complied with petitioner's request to get on the bed.  She could not explain her conduct.  He allowed Tara to go to the bathroom to clean up because she was bleeding.  After she finished, petitioner had her stay on the couch and gave her a blanket.  Tara, who asked petitioner not to hurt or kill her, eventually fell asleep.  Petitioner fell asleep after Tara.  He awoke to someone pounding on his front door; no one responded when petitioner asked who was there. Tara was no longer in the apartment but some of her clothing and personal effects remained.

C.   <u>Outcome</u>

The jury found petitioner guilty of 10 out of 11 counts: forcible rape, forcible oral copulation, assault with a firearm, battery with serious bodily injury, false imprisonment by violence, felon in possession of a firearm, illegal possession of ammunition, criminal threats, possession of cocaine, and possession of methamphetamine.  Petitioner was acquitted of forcible penetration by a foreign object.  The jury sustained enhancements for great bodily injury and use of a firearm.  After sustaining a strike, a serious felony, and two prior prison term allegations, the

5

1    judge sentenced defendant to 80 years to life plus a consecutive 59 years.

2    II.    Post-Conviction Proceedings in the California Courts

3    Petitioner timely appealed.  On February 19, 2014, the California Court of Appeal

4    affirmed the judgment of conviction and modified the sentence.  Lodged Doc. 9.  The California

5    Supreme Court denied review on April 30, 2014.  Lodged Doc. 11.

6    On January 12, 2016, petitioner filed a petition for writ of habeas corpus in the Superior

7    Court of Shasta County.  Lodged Doc. 12.  The petition was summarily denied on January 15,

8    2016, for lack of a prima facie case and on procedural grounds.  Lodged Doc. 13.  Petitioner next

9    filed a habeas petition in the California Court of Appeal, which was denied without comment or

10   citation.  Lodged Docs. 14, 15.  Petitioner then filed a habeas petition in the California Supreme

11   Court, which was denied without comment or citation on May 25, 2016.  Lodged Docs. 16, 17.

12   STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

13   28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

14   1996 ("AEDPA"), provides in relevant part as follows:

15   (d) An application for a writ of habeas corpus on behalf of a person
     in custody pursuant to the judgment of a state court shall not be
16   granted with respect to any claim that was adjudicated on the merits
     in State court proceedings unless the adjudication of the claim –
17

18   (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as
     determined by the Supreme Court of the United States; or
19

20   (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
     State court proceeding.
21

22   The statute applies whenever the state court has denied a federal claim on its merits,

23   whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

24   (2011).  State court rejection of a federal claim will be presumed to have been on the merits

25   absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

26   489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

27   decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

28   may be overcome when there is reason to think some other explanation for the state court's

1   decision is more likely." Id. at 99-100.

2        The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

3   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

4   U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

5   Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

6   issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

7   (2013).

8        A state court decision is "contrary to" clearly established federal law if the decision

9   "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

10  U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

11  court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

12  the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

13  was incorrect in the view of the federal habeas court; the state court decision must be objectively

14  unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

15       Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

16  Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

17  reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

18  words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

19  Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

20  confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

21  724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

22  summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

23  state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

24  must determine what arguments or theories may have supported the state court's decision, and

25  subject those arguments or theories to § 2254(d) scrutiny.  Richter, 563 U.S. at 102.

26  ////

27  ////

28  ////

DISCUSSION

I. Claim One: Petitioner's Confrontation Rights and Due Process Right to Present a
Defense Were Violated by Limitations Placed on Cross-Examination

A. Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that his rights under the Confrontation Clause, and his due process right to present a defense, were violated by the trial court's limitations on defense cross-examination of complaining witness Tara S.  ECF No. 19 at 8-16.

Petitioner's defense to the alleged sex offenses was that he and Tara had consensual sexual relations that she initiated.  Accordingly, Tara's testimonial credibility was key.  The defense sought to impeach her credibility with evidence that she dated Black men, contrary to her testimony that she was not attracted to Black men and had not had consensual sex with petitioner, who is African American.  Counsel wanted to establish that Tara had sexual relations with Isaac, who the defense thought was Black.  The defense was not able to locate Isaac.

The trial court initially ruled the defense could not ask Tara whether she had prior consensual sex with others.  Defense counsel later renewed his contention that he should be allowed to ask Tara if she had relations with Isaac.  The trial court said the defense would first have to present evidence of Isaac's race, in order to establish relevance.  Defense counsel noted Tara's use of the term "nig" in the text to Isaac, and said this was a slang term for "nigger."  Defense counsel argued that he wanted to ask Tara if Isaac was a Black man, and if she said no, to explain her use of the term "nig" in the text to him.  The trial court permitted the defense to inquire into the matter at a hearing pursuant to California Evidence Code section 402.

At the hearing, Tara was asked whether she "perceived Isaac to be a black man," and she answered, "No."  2 RT 571.  When asked to identify his race, she testified that she thought Isaac was "like Puerto Rican or something, something like that.  I'm not a hundred percent sure. . . ."  Id.  She acknowledged "[p]robably" having referred to him as a "nig" in a text, explaining, "I don't really mean anything by it.  I would call—I call quite a few people that."  Id.  Tara volunteered, "I call everyone that, I guess.  I don't really mean—I mean, it's like slang, I guess."  She denied knowing what the term was slang for, explaining "it's just something I say."  Id.

8

The trial court ruled that the defense could ask Tara about the use of the term "nig" in the texts to Isaac and Jenny, because bias was "another issue in this case." 2 RT 579. But defense counsel could not ask Tara about any prior sexual conduct because she had testified at the 402 hearing that she did not perceive Isaac to be Black. Id.

### B. The Clearly Established Federal Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." This includes the right to cross-examine prosecution witnesses. Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam). However, cross-examination may be limited to accommodate other legitimate interests in the criminal trial process. Rock v. Arkansas, 483 U.S. 44, 55 (1987). Accordingly, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examinations based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Violations of the Confrontation Clause are subject to harmless error analysis. Id. at 684.

The Constitution separately guarantees to criminal defendants the right to present a defense. Chambers v. Mississippi, 410 U.S. 284 (1973); Crane v. Kentucky, 476 U.S. 683, 690 (1986). State rules limiting the admissibility of defense evidence are constitutionally permissible as long as they are rationally related to the legitimate purpose of excluding evidence that has only a weak logical connection to the central issues at trial. Holmes v. South Carolina, 547 U.S. 319, 326-330 (2006) (regarding third-party culpability evidence).

### C. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

////

////

9

The appellate court reasoned as follows:

> Defendant contends the trial court violated his right to confrontation by preventing the defense from asking Tara if she had prior consensual sexual relations with Isaac. We disagree.

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion." (Evid. Code, § 353, subd. (a).)

> While defendant sought to question Tara about her possible sexual relations with Isaac, the defense never asserted that it was entitled to open this line of questioning pursuant to the right to confrontation under the state and federal Constitutions. When the trial court ruled the defense had not established the necessary foundation to question Tara about her prior relations with Isaac, defendant did not raise an objection based on his right to confrontation. Failing to articulate a confrontation clause claim below precludes defendant from tendering it on this appeal. (*People v. Burgener* (2003) 29 Cal.4th 833, 869.) Defendant's contention would fail even if it were not forfeited.

> The Sixth Amendment's confrontation clause guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 685-686.) The essential purpose of this right is "'to secure for the opponent the opportunity of cross-examination.' [Citation.]" (*Davis v. Alaska* (1974) 415 U.S. 308, 315-316, italics omitted.) However, neither the confrontation clause nor state law affords the right to unlimited crossexamination. (*People v. Sully* (1991) 53 Cal.3d 1195, 1219-1220.) Trial courts retain wide latitude to impose reasonable limits on cross-examination without violating the confrontation clause to prevent prejudice and confusion of the issues or to curtail interrogation that is repetitive or marginally relevant. (*People v. Morse* (1992) 2 Cal.App.4th 620, 642.) The ordinary rules of evidence do not compromise a defendant's right to a fair trial or to present his defense. (*Id*. at pp. 641–642.)

> A defendant cannot present evidence of the complaining witness's prior sexual conduct to prove consent. (Evid. Code, § 1103, subd. (c)(1).) One exception to this rule is that such evidence is admissible to attack the credibility of the complaining witness. (*Id*., § 1103, subd. (c)(5).) Such evidence is only admissible after an in camera hearing and is subject to the limitations of Evidence Code section 352. (*People v. Chandler* (1997) 56 Cal.App.4th 703, 707-708.)

> The defense was afforded ample opportunity to cross-examine Tara. This included her use of the very questionable term "nig" in two texts. Inquiry into Tara's possible prior sexual relationship with Isaac was relevant only if the defense established that he was Black and therefore attacking the credibility of Tara's testimony that she

was not attracted to defendant because he was Black. The defense had no direct evidence that Isaac was Black, it could not produce him as a witness, and Tara testified that she did not perceive him as being Black. The only evidence that Isaac was Black, was Tara's use of "nig" in the text to him, and that was countered by Tara's explanation that she used that term as slang rather than with a racial connotation.

It was neither an abuse of discretion nor a violation of the right to confrontation for the trial court to find defendant had not sufficiently established Isaac's race and therefore disallow this single line of inquiry. In addition, in light of the overwhelming evidence of defendant's guilt and the considerable evidence bolstering Tara's credibility, any possible error in failing to allow the questioning was also harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

Lodged Doc. 9, 2014 WL 630182 at *4-*5.

> D. Objective Reasonableness Under § 2254(d)

Because this claim must be denied on the merits, the undersigned elects to bypass the question whether it is procedurally defaulted. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (permitting such bypass where merits are easily resolved against petitioner).

The AEDPA bars habeas relief because the California Court of Appeal did not unreasonably apply the U.S. Supreme Court's Confrontation Clause precedents. Those precedents permit limitations on cross-examination, Rock, 483 U.S. at 55, and the state court identified permissible bases for the trial court in this case to have limited cross-examination of Tara. The exclusion of irrelevant impeachment evidence does not violate the Confrontation Clause, and petitioner failed to establish a factual basis for this theory of relevance. Moreover, strong policy reasons support limits on the questioning of sexual assault complainants about their unrelated sex lives. The prevention of harassment and protection of sexual privacy are well-established grounds for reasonable restriction of cross-examination. See Van Arsdall, 475 U.S. at 679. Here the trial court followed state procedures designed to protect both the confrontation rights of defendants and the privacy rights of complainants on sex cases. See Cal. Evid. Code, § 1103(c); People v. Chandler, 56 Cal App.4th 703, 707-708 (1997). The U.S. Supreme Court has never held that these rules and procedures are constitutionally infirm. Accordingly, petitioner's Confrontation Clause claim fails to satisfy 28 U.S.C. § 2254(d).

11

1      Moreover, the Court of Appeal found that any arguable error was harmless, and there is

2   nothing objectively unreasonable about the state court's application of the harmless error rule.

3   The Court of Appeal accurately identified the applicable standard as that of Chapman v.

4   California, 386 U.S. 18 (1967).  Where a state court has denied relief on Chapman grounds,

5   federal habeas relief is available only if the application of Chapman was itself objectively

6   unreasonable.  Mitchell v. Esparza, 540 U.S. 12 (2003).  For this alternative reason as well,

7   petitioner's Confrontation Clause claim does not entitle him to relief.

8      The California Court of Appeal did not separately discuss petitioner's assertion that the

9   limitations on cross-examination violated his due process right to present a defense.  The

10  undersigned therefore addresses this issue as an unexplained merits denial.  The question under §

11  2254(d) is accordingly whether the state court's summary denial can be reasonably squared with

12  U.S. Supreme Court precedent.  See Richter, 562 U.S. at 102.  Here, summary denial was

13  perfectly consistent with clearly established federal law.  The U.S. Supreme Court has never held

14  that the right to present a defense includes the right to attack complaining witness credibility

15  without limitation.  To the contrary, the Court has held in the due process context that reasonable

16  limitations on defense evidence may be imposed.  See Holmes, 547 U.S. at 326-330.  The

17  limitations imposed on petitioner's cross-examination of Tara were appropriate for the reasons

18  explained by the state court, including California's important policy of protecting sexual assault

19  complainants from irrelevant inquiries into their consensual sex lives.  Petitioner was permitted to

20  present his chosen theory of defense: consent.  He testified, and his counsel argued, that his

21  sexual contact with Tara was consensual and that the violence had been instigated by her.  The

22  jury disbelieved petitioner, and there is no realistic possibility that the result would have been

23  different had petitioner been allowed to question Tara about her sexual activity with another

24  individual.

25      For all these reasons, the decision of the California Court of Appeal was not objectively

26  unreasonable.  Section 2254(d) therefore bars relief on Claim One.

27  ////

28  ////

12

II.     Claim Two: Ineffective Assistance of Counsel in Failing to Seek a Jury Instruction on
        Voluntary Intoxication

        A. Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that trial counsel provided ineffective assistance, in violation of his Sixth Amendment rights, by failing to seek a jury instruction on voluntary intoxication in relation to the criminal threat charge. ECF No. 19 at 19-27.

The trial evidence showed that petitioner purchased alcohol on the night of his encounter with Tara. She testified that when petitioner first made a sexual advance and she wasn't interested, "he got angry because he was drinking." 1 RT 130.

        B. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland Washington, 466 U.S. 668, 692, 694 (1984). The proper measure of attorney performance is objective reasonableness under prevailing professional norms. Id. at 688. Prejudice means that the error actually had an adverse effect on the defense and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-694.

        C. The State Court's Ruling

This claim was exhausted on appeal, and the last reasoned state court decision is the opinion of the Court of Appeals. That opinion is therefore the subject of review under § 2254(d). Ortiz, 704 F.3d at 1034.

The appellate court ruled as follows:

> Defendant contends trial counsel was ineffective for failing to request a pinpoint instruction on voluntary intoxication as a defense to criminal threats.
>
> While voluntary intoxication "'is not a defense to a general intent crime,'" evidence of such intoxication "is admissible on the issue of whether or not a defendant actually formed a required specific intent or mental state." (*People v. Mathson* (2012) 210 Cal.App.4th 1297, 1312.) The elements of the crime of criminal threats are: "

13

'(1) that the defendant "willfully threaten [ed] to commit a crime which will result in death or great bodily injury to another person"; (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out"; (3) that the threat . . . was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat"; (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety"; and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' [Citation.]" (*In re George T.* (2004) 33 Cal.4th 620, 630.) The offense is therefore a specific intent crime.

Since defendant did not request an instruction on voluntary intoxication, he cannot attack on appeal the trial court's failure to give one. (*People v. Myles* (2012) 53 Cal.4th 1181, 1217.) Asserting he was entitled to an instruction on voluntary intoxication as a defense to the specific intent element of criminal threats, defendant claims counsel's failure to request such an instruction constituted ineffective assistance.

A defendant claiming ineffective assistance of counsel has the burden to show: (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694.) That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. [Citations.]" (*People v. Kelly* (1992) 1 Cal.4th 495, 520.)

The defense of voluntary intoxication would be relevant only if defendant threatened Tara. The defense was that Tara consented to sex with defendant and she sustained her injuries when he defended himself from her attempted armed robbery. Asserting that he made threats to kill or commit great bodily injury on Tara but was too intoxicated to understand the nature of those threats is inconsistent with the theory of the defense. This provides a valid tactical reason not to seek instruction on voluntary intoxication.

There was also insufficient evidence of intoxication to support an instruction if it was requested. There was no testimony that defendant drank or used drugs before the attacks. The only evidence of defendant's possible intoxication was the testimony that he bought alcohol before bringing Tara and Jenny to his apartment, and Tara's speculation that defendant became angry at her because he was intoxicated. A request for instruction on voluntary intoxication based on this evidence would fail. "Counsel's failure to make a futile or unmeritorious motion or request is not ineffective assistance. [Citation.]" (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 836.)

Lodged Doc. 9, 2014 WL 630182 at *5-6.

1        D.  Objective Reasonableness Under § 2254(d)

2        The California Court of Appeal did not unreasonably apply Strickland.  First, it was

3 reasonable to conclude that the request for a voluntary intoxication instruction would have been

4 denied because it was not supported by the evidence.  This conclusion does not rest on an

5 objectively unreasonable evaluation of the state of the evidence.  And because the question of the

6 instruction's propriety is ultimately one of California law, the Court of Appeal's ruling on that

7 question must be accepted here as correct.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005)

8 (federal habeas court is bound by state court's interpretation of state law).  Counsel's failure to

9 make a futile request cannot have constituted deficient performance under Strickland, and cannot

10 have prejudiced petitioner.

11        Second, the California Court of Appeal reasonably pointed out that a voluntary

12 intoxication defense to the intent element of the threat charge would have been facially

13 inconsistent with the defense that was actually presented as to all counts, which was that Tara was

14 lying about all of petitioner's alleged violence.  The undersigned is wary of judges (state or

15 federal) postulating rationalizations for the acts and omissions of defense counsel, but it remains

16 the case that petitioner simply did not present a prima facie case of unreasonable performance

17 here.  Strickland itself establishes a "strong presumption that counsel exercised acceptable

18 professional judgment in all significant decisions made."  466 U.S. at 689.  In light of the facts

19 and circumstances of this case, it was entirely reasonable for the state court to follow that

20 presumption.

21        Because the state court did not unreasonably apply the U.S. Supreme Court's ineffective

22 assistance jurisprudence, federal habeas relief is unavailable.

23    III.    Claim Three: *Brady* Violation

24      A.  Petitioner's Allegations and Pertinent State Court Record

25        Petitioner alleges that the prosecutor failed to timely disclose text messages and a photo

26 from Tara's cellphone that undermined her version of events.  The photograph showed Tara

27 holding a gun, and the text messages exchanged with her friends after the incident reflected her

28 knowledge that her "story" didn't add up.  ECF No. 19 at 30-31.  Petitioner first learned of the

existence of this exculpatory evidence when his wife overheard prosecutors discussing it at a pretrial proceeding. The evidence was requested in discovery, but not produced until the second day of jury selection. Id.

### B. The Clearly Established Federal Law

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). The duty to disclose such evidence applies even when there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and encompasses impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 (1985).

Evidence is material for Brady purposes if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the . . . proceeding would have been different." Cone v. Bell, 556 U.S. 449, 469-70 (2009). In sum, for a Brady claim to succeed on collateral review, petitioner must show: (1) that the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution, either willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice ensued). Banks v. Dretke, 540 U.S. 668, 691 (2004); Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

### C. The State Court's Ruling

This claim was presented in state habeas. The superior court denied the claim in a brief written order that summarily stated its reasons; that statement of reasons was presumptively adopted by the California Supreme Court's "postcard denial." See Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005). Accordingly, the superior court's decision is the ruling subject to review under § 2254(d). Id.

The superior court ruled in pertinent part as follows:

> The petition for writ of habeas corpus is summarily denied. The petition either does not state a prima facie case for relief, or the issues raised in the petitioner are issues that either were raised on appeal, or should have been. A petition for writ of habeas corpus is not a substitute for an appeal, nor may it be used for a second

appeal. *In re Harris* (1993) 5 Cal.4th 813, 829; *Ex Parte Dixon* (1953) 41 Cal.2d 756, 759.

Lodged Doc. 13.

      D. Objective Unreasonableness Under § 2254(d)

The undersigned again elects to bypass the issue of procedural default, because this claim may be denied on the merits.  See Lambrix, 520 U.S. at 525.  To the extent that the superior court rejected this claim for lack of a prima facie case, that is the merits decision reviewed for reasonableness under § 2254(d).  Nunes v. Mueller, 350 F.3d 1045, 1054-55 (9th Cir. 2003), cert. denied, 543 U.S. 1038 (2004).

It cannot have been unreasonable to find that petitioner's allegations failed to establish a prima facie Brady claim, because the evidence at issue was known to the defense before trial and was eventually produced to the defense.  It is a fundamental premise of Brady that due process is implicated only when the defense is denied knowledge of or access to exculpatory information for use at trial.  See Strickler, 527 U.S at 282 (suppressed evidence is "known to the state but not disclosed to trial counsel"); see also Giles v. Maryland, 386 U.S. 66, 96 ("any allegation of suppression boils down to an assessment of what the State knows at trial in comparison to the knowledge held by the defense") (White, J., concurring).  Accordingly, evidence is not "suppressed" within the meaning of Brady and its progeny when it is known to the defense and either independently available or produced in time to be used at trial.  See United States v. Dupuy, 760 F.2d 1492, 1501-1502 & n. 5 (9th Cir. 1985) (collecting cases); see also Raley v. Ylst, 470 F.3d 792, 804 (9th Cir. 2006) (rejecting Brady claim when the "[p]etitioner possessed the salient facts regarding the existence of the records that he claims were withheld").

Delayed disclosure may provide grounds for a continuance, but it does not constitute the unconstitutional suppression of evidence.  United States v. Gamez-Orduno, 235 F.3d 453, 461-62 (9th Cir. 2000).  Because petitioner has identified no impeachment evidence that was not available for use at trial, he has not stated a prima facie Brady claim.  Accordingly, the state court's summary rejection of the claim on the merits was not objectively unreasonable.  There is no need for this court to analyze materiality.

IV.     Claims Four Through Eleven: Additional Instances of Ineffective Assistance of
        Counsel

Petitioner alleges that his trial counsel provided ineffective assistance in several additional ways, which are addressed individually below.  These claims were presented to the state courts in a petition for writ of habeas corpus.  The only reasoned decision, from the superior court, denied relief on the stated but unelaborated ground that petitioner failed to present a prima facie case.  Lodged Doc. 13 (quoted in full above, in relation to petitioner's Brady claim).[3]  Accordingly, this is the determination reviewed here for objective reasonableness.  See Nunes, 350 F.3d at 1054-55.  The clearly established federal law governing this inquiry is Strickland, supra.

A.  Claim Four: Misrepresenting the Terms of a Favorable Plea Offer

1.  Petitioner's Allegations

Petitioner alleges that on August 20, 2012, the prosecutor extended a 20-year offer that was miscommunicated by defense counsel.  Counsel incorrectly told petitioner that he was "now only facing a maximum of 20 years because the DA was dropping the controlling charges and only wanted to pursue the PC 245(a)(2), PC 30305(a)(1), PC 29800(a), HS 11350(A), and HA [sic] 11377(a)."  ECF No. 19 at 33.  Petitioner refused the 20 year offer only because he had been told in error that he faced a maximum sentence of 20 years in any case.

The claim rests on petitioner's Exhibit A-11.  This is a page from trial counsel's case file, dated August 20, 2012, with brief handwritten notations of marginal legibility.  The notes include text that appears to read as follows:

> / Told client that DDA Hempler will not give up on the 245(a)(1)
> because w/o it he can't get to 20 years
>
> Client rejects offer.  Set NTW

ECF No. 19 at 61 (Exhibit A-11 to Second Amended Petition).

---

[3]  As respondent points out, the superior court's citation to Dixon, 41 Cal. 2d 756, cannot have been intended to apply to petitioner's ineffective assistance of counsel claims as a matter of California law.  See In re Robbins, 18 Cal. 4th 770, 814 n.34 (1998) (Dixon bar does not apply to claims of ineffective assistance of trial counsel).  Accordingly, respondent does not contend in this court that these claims are procedurally defaulted.

18

1              2.  Objective Unreasonableness Under § 2254(d)

2          In the plea context, the performance prong of <u>Strickland</u> turns not on whether "counsel's

3    advice [was] right or wrong, but... whether that advice was within the range of competence

4    demanded of attorneys in criminal cases."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970).

5    The reviewing court must apply the usual presumption of reasonable performance.  <u>See</u>

6    <u>Strickland</u>, 466 U.S. at 690.  Here, it cannot have been objectively unreasonable of the superior

7    court to deny relief, because the exhibit on which the claim is based does not support petitioner's

8    allegations or overcome the presumption of attorney reasonableness.

9          Counsel's brief, rather cryptic note to the file plainly documents that an offer was

10   extended and rejected, and that counsel told petitioner that the prosecutor insisted on "getting to"

11   twenty years and therefore would not drop the count under Cal. Penal Code 245(a)(1) (assault

12   with a deadly weapon).  <u>See</u> Petitioner's Exhibit A-11, ECF No. 19 at 61.  This note strongly

13   suggests that the proposed plea agreement was for a 20-year sentence, and that it required a guilty

14   plea to the ADW count.  The note does not, however, confirm or even support a reasonable

15   inference that counsel also incorrectly told petitioner that the prosecutor was dropping the most

16   serious charges *regardless* of any plea agreement, and that petitioner was therefore facing a 20-

17   year maximum *whether or not* he took the plea.  Any such inference from the file note would be

18   unreasonable, and petitioner's unsupported allegations in this regard are simply implausible given

19   the facts of the case.

20         Unsupported and/or implausible allegations of attorney error are insufficient to support

21   relief on a <u>Strickland</u> claim.  <u>See</u> <u>James v. Borg</u>, 24 F.3d 20, 26 (1994) (factually unsupported

22   claim is conclusory and does not warrant habeas relief); <u>Shah v. United States</u>, 878 F.2d 1156,

23   1160-1161 (9th Cir.) (summary denial of ineffective assistance claim affirmed where allegation of

24   deficient advice by counsel was implausible and unsupported), <u>cert. denied</u>, 493 U.S. 869 (1989).

25   Petitioner's exhibit cannot overcome the strong presumption that counsel "rendered adequate

26   assistance and made all significant decisions in the exercise of reasonable professional judgment."

27   <u>Strickland</u>, 466 U.S. at 690.  Because this allegation of deficient performance is not supported by

28   the record, it was not objectively unreasonable for the state court to conclude that petitioner failed

1   to establish a prima facie case.

2        Moreover, to demonstrate prejudice in the context of plea offers, "a defendant must show

3   the outcome of the plea process would have been different with competent advice." Lafler v.

4   Cooper, 566 U.S. 156, 163 (2012).  The record before the state court provided no basis for a

5   conclusion that petitioner would have accepted the plea offer at the time it was available had he

6   been advised differently.  Both the state court record and the contents of the habeas petition

7   reflect petitioner's insistence that he should have been acquitted and that the victim was lying.

8   This is consistent with his rejection of the 20-year offer.  Prejudice is not demonstrated by

9   petitioner's bare assertion in habeas proceedings that he would have accepted the offer if properly

10  advised. Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002).  Accordingly, the state court

11  could reasonably have rejected this claim on either performance or prejudice grounds.

12       B.  Claim Five: Failure to Investigate Exculpatory Evidence

13            1.  Petitioner's Allegations

14       First, petitioner alleges that two gun holsters were found in his apartment.  One belonged

15  to Tara, and the one that belonged to him did not fit the gun that was entered into evidence.

16  Counsel should have investigated and brought these facts to the jury's attention to show that Tara

17  was responsible for the gun.  Second, fewer than half of the blood samples in the apartment were

18  tested for DNA, and counsel failed to use this fact to demonstrate that the blood may not have

19  come from the victim (it might have come from menstruating female dogs or other sources)

20  and/or that the prosecution had committed misconduct.  Third, counsel failed to obtain and make

21  use of the photo and texts from Tara's phone that are described above in relation to the Brady

22  claim.  ECF No. 19 at 34-35.

23            2.  Objective Unreasonableness Under § 2254(d)

24       In general, counsel's strategic choices (including what evidence to pursue and present) are

25  accorded deference if those decisions are themselves reasonable and are based on reasonable

26  investigations, research, and judgments. Strickland, 466 U.S. at 690-691.  The scope of counsel's

27  investigation is itself entitled to deference unless limitations on investigation lacked a reasonable

28  basis. Id.  Moreover, petitioner bears the burden of demonstrating what further evidence was

available and how it would have changed the result of the proceeding.  Id.; Hendricks v. Calderon, 70 F.3d 1032, 1042 (1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [petitioner] cannot meet the prejudice prong of the Strickland test."), cert. denied, 517 U.S. 1111 (1996).

Where there is no evidence to support prejudice, a court need not inquire into the adequacy of counsel's efforts.  Strickland, 466 U.S. at 689.  Here petitioner has presented no evidence that additional DNA testing would have been exculpatory.  Defense counsel did make the point, through cross-examination of Officer Williams, that some of the substance observed in the apartment had not been tested to confirm that it was blood or to determine whether it came from Tara.  2 RT 677.  However, there *was* DNA evidence indicating that human blood was on petitioner's penis and on the gun, and that this blood was consistent with Tara as a contributor. This was strong evidence against petitioner, which would not have had less probative value even if other blood in the apartment was not human or not Tara's.

Defense counsel did confronted Tara on cross-examination with her text messages related to drug dealing and the cellphone photo of herself holding a gun.  1 RT 210 (photo), 228-229 (text messages).  There is no reason, on the record of this case as a whole, to think that any (unspecified) additional evidence from Tara's phone, or evidence regarding the fit between gun and holster,[4] would have had any effect whatsoever on the verdict.  Accordingly, the state court's finding of no prima facie case was not unreasonable.

C.  Claim Six: Failure to Effectively Impeach Tara S. and Detective Williams

1.  Petitioner's Allegations

Petitioner alleges that Detective Williams testified falsely and made inconsistent statements regarding the number of rounds of ammunition that were in the gun seized from the scene, and that counsel failed to impeach him with the glaring inconsistencies.  Petitioner alleges further that counsel should have impeached Tara with numerous specified inconsistencies in her

---

[4]  There was no testimony one way or the other about a holster.  Tara never said that petitioner had taken the gun out of a holster.  Accordingly, this evidence would have had little to no probative value regarding ownership or control of the gun.

1    testimony and prior statements.  ECF No. 19 at 36.

2            2.  Objective Unreasonableness Under § 2254(d)

3        The undersigned has reviewed the testimony of Tara S. and Investigator Williams, with

4    special attention to cross-examination.  The record does not support a finding of deficient

5    performance.  See 1 RT 159-168, 207-225, 228-233, 246-247 (cross-examination of Tara); 1 RT

6    448-450, 541-547, 2 RT 677 (cross-examination of Williams).  Tara was cross-examined

7    regarding her drug dealing and related text messages, and was confronted with her cell phone

8    photo of herself holding a gun.[5]  Counsel inquired into inconsistencies between her testimony on

9    direct examination and her initial statements to law enforcement; additional questioning along the

10   lines petitioner suggests could have amounted to counter-productive witness badgering.

11   Moreover, there is no reason to suspect that the jury would have made different credibility

12   determinations had they focused on the multiple minor discrepancies that petitioner cites in

13   support of his claim in relation to these two witnesses.  Accordingly, the state court did not

14   unreasonably apply Strickland.

15           D.  Claim Seven: Failure to Object to the Admission of Various Items of Evidence and to

16               Certain Statements About the Evidence Made by the Prosecutor in Closing Argument

17           1.  Petitioner's Allegations

18       Petitioner contends that counsel failed to object when the prosecutor misstated the

19   evidence by saying two brown blankets had been found at petitioner's apartment.  There was only

20   one brown blanket, and as defense counsel argued in closing it did not have blood on it as would

21   have been expected from Tara's testimony that it was wrapped around her after she had been

22   beaten.  Petitioner alleges further that counsel failed to object to police officer testimony about

23   the presence of blood on the sofa, and photographic evidence of blood on the sofa and bloody

24   rags in the trash, in the absence of DNA or other scientific evidence establishing that the

25   _____

26   [5] Tara was subsequently called by the defense, and asked about her texts to Isaac and her use of
     the word "nig."  2 RT 582-585.  She testified that she did not consider Isaac to be a Black man,

27   and that the word "nig" did not always have racial connotations to her.  Pursuant to the pretrial
     ruling addressed in Claim One, counsel did not pursue questions about whether she had a sexual

28   relationship with Isaac.

substance was actually blood.  He also attacks counsel's failure to challenge prosecutorial references to "blood," and counsel's own "incompetent" use of the term "blood" in the absence of such scientific evidence.  Petitioner also contends that the prosecutor misstated his testimony in closing argument, and drew an improper inference about how "blood" got on the bed, and that defense counsel failed to object.  ECF No. 19 at 37-38.

### 2.   Objective Unreasonableness Under § 2254(d)

As to the blanket, the claim is defeated by petitioner's acknowledgement that counsel challenged the prosecutor's alleged misstatement in his own closing argument.  The other issues related to visible blood are frivolous.  It is not "incompetent" of defense counsel to use the word "blood" or let references to blood go by without objection, when photographic evidence shows blood or a witness testifies that he saw blood.  No rule of evidence or logic requires DNA evidence or other scientific proof that a substance is blood in order for jurors to so conclude, and futile or frivolous objections do not constitute unreasonable attorney performance.  Defense counsel did, on cross-examination of Officer Williams, make the point that some stains he identified as blood had not been tested to confirm that it was blood.  And the jury also learned that the human blood found on the gun and on petitioner's penis was consistent with Tara's DNA. The blood on the sofa was not forensically significant.  Because petitioner's allegations support neither deficient performance nor prejudice, the state court's conclusion was not objectively unreasonable.

### E.  Claim Eight: Failure to Present Favorable Evidence Known to Counsel

#### 1.   Petitioner's Allegations

Petitioner contends that counsel failed to use Tara's outgoing text messages from the night of the incident, which reference drinking, to impeach her testimony that she was forced to drink alcohol against her will on the night of the assault.[6]  Counsel also failed to present evidence that the address petitioner gave to arresting officers was not a false address, it was his mother's

---

[6]  Respondent refers to these text messages as undated, but petitioner's exhibit indicates that they were sent and received on 2/8/12, the date of the assault.  See ECF No. 19 at 99 (petitioner's Exhibit D-1).

1    address where he had lived on and off.  ECF No. 19 at 39.

2                    2.   Objective Unreasonableness Under § 2254(d)

3          The cross-examination of a sexual assault complainant is a very delicate task, and defense

4    counsel must balance the need to test credibility with the need to avoid appearing a bully in front

5    of the jury.  Petitioner focuses here on counsel's failure to impeachment the witness on an issue

6    that is both collateral and minor.  Even if Tara had texted a friend that she was out drinking, that

7    would not likely have caused the jury to conclude that she was lying when she testified that

8    petitioner had forced alcohol down her throat at a different point in the night—still less would it

9    have given the jury a reasonable basis to reject her version of the beating and rape, especially in

10   light of her significant injuries.  The probative value of this impeachment would have been slight

11   if any, and the potential risks were high.  Accordingly, the state court could easily have concluded

12   either that there was no deficient performance or that there was no prejudice, or both.

13         As to the address that petitioner provided to police, there is no reasonable probability of a

14   different outcome had the jury known that this was a legitimate address sometimes used by

15   petitioner.  Moreover, the trial testimony established that petitioner had provided this address

16   when asked where he was living *at the time*.  2 RT 564.  The fact that he had once lived there

17   would not have made it a truthful answer to that question.  The state court did not unreasonably

18   apply Strickland.

19         F.   Claim Nine: Failure to Present the Testimony of Lay Witnesses and to Retain Expert

20              Witnesses

21              1.   Petitioner's Allegations

22         Petitioner challenges counsel's failure to present the testimony of Phil Tracy, the father of

23   a friend of Tara's, who told petitioner when they were in jail together that Tara had recanted her

24   allegations against petitioner.  Petitioner also challenges counsel's failure to present the testimony

25   of Dawn Bickel regarding the alternative address that petitioner had provided arresting officers.

26   Finally, petitioner contends that counsel should have retained an expert witness or witnesses to

27   review the victim's medical records and testify that she had no injuries consistent with rape and

28   that her actual injuries were inconsistent with her version of the assault.  ECF No. 19 at 40.

2. Objective Unreasonableness Under § 2254(d)

Petitioner did not provide the state court with a declaration from Phil Tracy setting forth the testimony he would have provided if called to testify. See Lodged Doc. 12. Even assuming that Tracy would have testified as petitioner alleges, and assuming that his testimony about Tara's alleged recantation was admissible, that does not mean that a reasonable defense lawyer should have presented it. Petitioner has presented no facts to indicate that Tracy would have made a credible witness, or any circumstances making it reasonably likely that the jury would have believed the alleged recantation or doubted Tara's testimony because of it. Indeed, in light of the extensive medical evidence of Tara's injuries, and the weight of the evidence overall, petitioner cannot overcome Strickland's presumption that counsel's failure to present Phil Tracy's testimony was within the range of acceptable professional performance.

As to Dawn Brickell's testimony regarding petitioner's addresses, there is no reasonable possibility this would have affected the jury's verdict for the reasons previously stated. Counsel cannot be faulted for failing to present evidence with such scant evidentiary value.

Regarding counsel's failure to retain experts, the claim necessarily fails because petitioner has not proffered an exculpatory expert opinion. Without a showing of the evidence that could have been developed, petitioner cannot establish prejudice under Strickland. See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice.").

For all these reasons, the state court did not unreasonably reject the claim.

G. Claim Ten: Failure to Obtain a Continuance for the Purpose of Locating and Presenting the Testimony of Isaac Martinez

1. Petitioner's Allegations

Petitioner faults counsel's failure to produce Isaac Martinez, in order to disprove Tara's testimony that she did not have consensual sex with Black men. (The factual and procedural background to this issue is set forth above regarding Claim One.) Petitioner alleges that competent counsel would have obtained the continuance necessary to locate and produce the witness. ECF No. 19 at 42.

25

1            2.  Objective Unreasonableness Under § 2254(d)

2        Petitioner has presented no evidence that a continuance would have enabled counsel to

3    locate Martinez.  The record reflects that counsel (and petitioner's wife) tried and failed to find

4    him prior to trial.  Moreover, Martinez was not a material witness to the charged crimes and

5    petitioner identified no admissible evidence that he could have presented.  He was potentially

6    relevant only to establishing a foundation for impeachment of Tara's statement that she did not

7    have consensual sex with Black men.  Even if Martinez had been located and did appear to be

8    Black, Tara's testimony that she did not perceive Martinez to be Black would still have undercut

9    the necessary predicate to petitioner's desired line of impeachment.[7]  Because petitioner's

10   allegations establish neither deficient performance nor prejudice, the state court did not

11   unreasonable find that there was no prima facie case of ineffective assistance.

12           H.  Claim Eleven: The Cumulative Effect of the Above Errors and Omissions

13               1.  Petitioner's Allegations

14       Petitioner contends that the cumulative effect of counsel's errors and omissions violated

15   his rights under the Sixth Amendment.  ECF No. 19 at 43.

16               2.  Objective Unreasonableness Under § 2254(d)

17       Respondent argues that the U.S. Supreme Court has never held that cumulative attorney

18   error may rise to the level of a Sixth Amendment violation where the individual errors standing

19   alone do not.  ECF No. 32 at 67-68.  Strickland itself, however, recognizes that the prejudice

20   inquiry requires a cumulative assessment of counsel's errors.  Strickland, 466 U.S. at 696; see

21   also Silva v. Woodford, 279 F.3d 825, 834 (9th Cir. 2002) (recognizing that cumulative prejudice

22   analysis applies to ineffective assistance of counsel claim).  In assessing prejudice from deficient

23   performance, the court must consider all of trial counsel's unprofessional errors against "the

24   totality of the evidence" adduced at trial and in postconviction proceedings.  Strickland, 466 U.S.

25   at 695; Williams v. Taylor, 529 U.S. 362, 397 (2000).

26   ////

27

28   [7]  The court here incorporates the discussion above regarding Claim One.

1       This principle does not help petitioner, because none of his allegations overcome the

2   presumption of constitutionally adequate performance.  And even if deficient performance is

3   posited arguendo, when counsel's alleged errors are considered together against the totality of the

4   evidence, there remains no reasonable probability that the result of petitioner's trial would have

5   been different.  It was therefore not objectively unreasonable under <u>Strickland</u> for the state court

6   to have summarily rejected this claim.

7   CONCLUSION

8       For all the reasons explained above, the state courts' denial of petitioner's claims was not

9   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Accordingly, IT IS

10  HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

11      These findings and recommendations are submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

16  he shall also address whether a certificate of appealability should issue and, if so, why and as to

17  which issues.  <u>See</u> 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

18  within fourteen days after service of the objections.  The parties are advised that failure to file

19  objections within the specified time may waive the right to appeal the District Court's order.

20  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

21  DATED: March 1, 2021

22

23      ALLISON CLAIRE

    UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28